# United States Court of Appeals

*for the*

# Fourth Circuit

THE SUMMIT CHURCH-HOMESTEAD
HEIGHTS BAPTIST CHURCH, INC.,

*Plaintiff-Appellee,*

— v. —

CHATHAM COUNTY, NORTH CAROLINA BOARD OF
COMMISSIONERS,

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF NORTH CAROLINA AT GREENSBORO IN NO.
1:25-CV-00113-UA-JLW, HONORABLE WILLIAM L. OSTEEN, U. S.
DISTRICT COURT JUDGE

## BRIEF FOR DEFENDANT-APPELLANT

STEVEN ANDREW BADER
CRANFILL SUMNER, LLP
5440 Wade Park Boulevard
Raleigh, North Carolina 27607
(919) 828-5100

PATRICK HOUGHTON FLANAGAN
SAMANTHA MARIE OWENS
CRANFILL SUMNER, LLP
P. O. Box 30787
Charlotte, North Carolina 28230
(704) 332-8300

*Attorneys for Defendant-Appellant*

CP COUNSEL PRESS   (800) 4-APPEAL • (813490)

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

**DISCLOSURE STATEMENT**

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1832__      Caption: __The Summit Church-Homestead Heights Baptist Church v. Chatham__ Co.

Pursuant to FRAP 26.1 and Local Rule 26.1,

__Chatham County, North Carolina Board of Commissioners__
(name of party/amicus)

__defendant__

 who is _____appellant_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.     Is party/amicus a publicly held corporation or other publicly held entity?     ☐YES ☑NO


2.     Does party/amicus have any parent corporations?     ☐YES ☑NO
       If yes, identify all parent corporations, including all generations of parent corporations:




3.     Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or
       other publicly held entity?     ☐YES ☑NO
       If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct
     financial interest in the outcome of the litigation?                                    ☐YES ☑NO
     If yes, identify entity and nature of interest:


5.   Is party a trade association? (amici curiae do not complete this question)    ☐YES ☑NO
     If yes, identify any publicly held member whose stock or equity value could be affected
     substantially by the outcome of the proceeding or whose claims the trade association is
     pursuing in a representative capacity, or state that there is no such member:


6.   Does this case arise out of a bankruptcy proceeding?                          ☐YES ☑NO
     If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a
     party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the
     caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held
     corporation that owns 10% or more of the stock of the debtor.


7.   Is this a criminal case in which there was an organizational victim?          ☐YES ☑NO
     If yes, the United States, absent good cause shown, must list (1) each organizational
     victim of the criminal activity and (2) if an organizational victim is a corporation, the
     parent corporation and any publicly held corporation that owns 10% or more of the stock
     of victim, to the extent that information can be obtained through due diligence.


Signature: /s/ Patrick H. Flanagan                    Date:            8-5-25

Counsel for: Defendant-Appellant

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES .................................................................iii

JURISDICTIONAL STATEMENT .................................................. 1

STATEMENT OF THE ISSUES............................................... 1

STATEMENT OF THE CASE .................................................. 1

ARGUMENT SUMMARY ........................................................ 5

ARGUMENT ........................................................................... 7

I.    Standard of review ................................................. 7

II.   RLUIPA does not undermine local legislative zoning decisions................................................................ 8

    A.   Conditional zoning is a legislative act in North Carolina ...................................................... 9

    B.   RLUIPA cannot be used to mandate local legislative action .......................................... 12

    C.   RLUIPA comports with the Tenth Amendment and separation of powers principles because it does not force local legislation ...................................... 14

III.  RLUIPA precedent does not support an injunction that directs Chatham County to zone for Summit Church's benefit ................................................... 16

    A.   The United States Supreme Court has held that zoning is a legislative function ..................................... 17

    B.   This Court has never used RLUIPA to order a local government to embark on legislative zoning ........................................................... 19

    C.   This Court's recent precedent confirms that zoning is a local legislative act beyond the federal judiciary's sphere............................................. 22

D.   The district court lacks the power to order
     Chatham County to undertake zoning
     legislation for Summit Church .................................... 24

CONCLUSION ............................................................. 26

CERTIFICATE OF COMPLIANCE ........................................ 28

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Andon, LLC v. City of Newport News,*
  813 F.3d 510 (4th Cir. 2016) ........................................................ *passim*

*Belle Terre v. Boraas,*
  416 U.S. 1 (1974) ................................................................................... 17

*Benning v. Georgia,*
  391 F.3d 1299 (11th Cir. 2004) ......................................................... 15

*Bethel World Outreach Ministries v. Montgomery County Council,*
  706 F.3d 548 (4th Cir. 2013) ...................................................... 18, 20

*Brown v. Town of Davidson,*
  439 S.E.2d 206 (N.C. Ct. App. 1994) ............................................. 10

*California v. Texas,*
  593 U.S. 659 (2021) .............................................................................. 8

*Canaan Christian Church v. Montgomery Cnty.,*
  29 F.4th 182 (4th Cir. 2022) ....................................................... 18, 20

*Charles v. Verhagen,*
  348 F.3d 601 (7th Cir. 2003) .............................................................. 15

*Chrisman v. Guilford County,*
  370 S.E.2d 579 (N.C. 1988) ............................................................... 11

*City of Boerne v. Flores,*
  521 U.S. 507 (1997) ............................................................................. 13

*Civil Liberties for Urban Believers v. City of Chicago,*
  342 F.3d 752 (7th Cir. 2003) ............................................................. 21

*County of Lancaster v. Mecklenburg County,*
  434 S.E.2d 604 (N.C. 1993) ................................................................ 9

*D.C. Court of Appeals v. Feldman,*
  460 U.S. 462 (1983) ...................................................................... 17, 24

*DaimlerChrysler Corp. v. Cuno,*
  547 U. S. 332 (2006) ............................................................................ 8

iii

*Employment Division, Dept. of Human Resources v. Smith,*
494 U.S. 872 (1992) .............................................................. 13

*Eubanks v. Wilkinson,*
937 F.2d 1118 (6th Cir. 1991) ....................................... 16

*Euclid v. Ambler Realty Co.,*
272 U.S. 365 (1926) ........................................................ 17

*Gardner v. City of Baltimore Mayor & City Council,*
969 F.2d 63 (4th Cir. 1992) ........................................... 23

*Godfrey v. Zoning Bd. of Adjustment,*
344 S.E.2d 272 (N.C. 1986) ........................................... 12

*Grace United Methodist Church v. City of Cheyenne,*
451 F.3d 643 (10th Cir. 2006) ...................................... 21

*Haaland v. Brackeen,*
599 U.S. 255 (2023) ......................................................... 15

*Humble Oil & Refining Co. v. Board of Aldermen,*
202 S.E.2d 129 (N.C. 1974) .............................................. 9

*In re Markham,*
131 S.E.2d 329 (N.C. 1963) ............................................ 10

*Jarrell v. Board of Adjustment,*
128 S.E.2d 879 (N.C. 1963) .............................................. 9

*Jesus Christ is the Answer Ministries, Inc. v. Balt. Cty.,*
915 F.3d 256 (4th Cir. 2019) ............................. 18, 20, 24

*Kirk v. Davidson Cnty.,*
551 S.E.2d 186 (N.C. Ct. App. 2001) .......................... 10

*M.S. v. Brown,*
902 F.3d 1076 (9th Cir. 2018) ...................................... 16

*Madison v. Riter,*
355 F.3d 310 (4th Cir. 2003) ......................................... 13

*Marriott v. Chatham Cnty,*
654 S.E.2d 13 (N.C. Ct. App. 2007) ......................... 6, 12

*Massey v. City of Charlotte*,
550 S.E.2d 838 (N.C. Ct. App. 2001) ........................................10, 11, 12

*Mayweathers v. Newland*,
314 F.3d 1062 (9th Cir. 2002) .............................................................15

*Mi Familia Vota v. Abbott*,
977 F.3d 461 (5th Cir. 2020) ..............................................................16

*Midrash Sephardi, Inc. v. Town of Surfside*,
366 F.3d 1214 (11th Cir. 2004) ......................................................7, 15

*Moore v. Harper*,
600 U.S. 1 (2023) ..............................................................................15

*Murphy v. NCAA*,
584 U.S. 453 (2018) .....................................................................14, 15

*N. Va. Hemp & Agric., LLC v. Commonwealth*,
125 F.4th 472 (4th Cir. 2025) ..............................................................8

*New York v. United States*,
505 U.S. 144 (1992) ...........................................................................15

*Prentis v. Atlantic Coast Line Co.*,
211 U.S. 210 (1908) ...........................................................................17

*Printz v. United States*,
521 U.S. 898 (1997) ...........................................................................15

*R.G. Moore Bldg. Corp. v.
Committee for Repeal of Ordinance R(C)-88-13*,
391 S.E.2d 587 (Va. 1991) .................................................................22

*Reaching Hearts Int'l, Inc. v. Prince George's County*,
No. 08-2281, 368 Fed. Appx. 370 (4th Cir. March 3, 2010)......18, 20, 24

*Redeemed Christian Church of God (Victory Temple) Bowie v.
Prince George's Cty.*,
17 F.4th 497 (4th Cir. 2021) .................................................7, 18, 19, 24

*Sas Assocs. 1, LLC v. City Council for the City of Chesapeake*,
91 F.4th 715 (4th Cir. 2024) ........................................................22, 23

*SAS Inst., Inc. v. World Programming Ltd.*,
    952 F.3d 513 (4th Cir. 2020) ....................................................... 7

*Smith & Lee Assocs. v. City of Taylor*,
    102 F.3d 781 (6th Cir. 1996) ...................................... 13, 15-16

*Summers v. City of Charlotte*,
    562 S.E.2d 18 (N.C. Ct. App. 2002) ...................... 6, 10, 12, 24

*Westchester Day Sch. v. Vill. of Mamaroneck*,
    504 F.3d 338 (2nd Cir. 2007) ................................................ 14

**Statutes & Other Authorities:**

28 U.S.C. § 1292(a)(1) ................................................................ 1

42 U.S.C. § 2000bb .................................................................. 13

42 U.S.C. § 2000cc(a)(1) ......................................................... 13

42 U.S.C. § 2000cc(a)(2)(C) .................................................... 13

42 U.S.C. § 2000cc-1(a) ........................................................... 13

N.C.G.S. § 160D ................................................................. 10, 11

N.C.G.S. § 160D-102(19) ......................................................... 10

N.C.G.S. § 160D-703 ................................................................ 10

# JURISDICTIONAL STATEMENT

The district court entered a preliminary injunction that prohibited Chatham County from denying Summit Church's request that the county conditionally rezone six parcels. Chatham County appealed.

This Court has jurisdiction to review a district court order granting a preliminary injunction under 28 U.S.C. § 1292(a)(1).

# STATEMENT OF THE ISSUES

The issue is whether separation of powers principles and tenth amendment anti-commandeering principles permit a federal court to enter an injunctive order under the Religious Land Use and Institutionalized Persons Act of 2000, known as RLUIPA, that forces a local government to engage in legislative rezoning.

# STATEMENT OF THE CASE

Summit Church is a religious nonprofit with numerous campuses in North Carolina's triangle region. [JA8, JA10]

Chatham County is a North Carolina political subdivision. Its elected board of commissioners serves as its governing and legislative body. [JA8-9; JA1717]

Chatham County land use regulations follow "Plan Chatham," a comprehensive plan adopted on November 20, 2017. [JA13, JA62] The primary goal of Plan Chatham is to "[p]reserve the rural character and lifestyle of Chatham County." [JA122] The secondary goals are "[d]iversify[ing] the tax base," "generat[ing] more quality, in-county jobs," and "[p]romot[ing] a compact growth pattern by developing in and near existing towns, communities, and in designated, well planned, walkable, mixed use centers." [Id.]

Chatham County has general use zoning districts, and conditional zoning districts. [JA342-344] Churches and other specified uses are permitted by right in five general use districts, and churches are allowed by special use permit in three others. [JA282] No use is permitted by right in a conditional zoning district. The county board may allow certain uses, including churches, in a conditional zoning district only through legislative rezoning. [JA22, JA24, JA1824-1825]

\* \* \*

In late 2023, Summit secured an option to buy six undeveloped parcels in Chatham County. It hoped to build a church. [JA21-23] Chatham County had previously zoned the parcels "Conditional District-

Compact Community." This particular district did not allow churches as a permitted use. [JA21-22] So to build a church at this site, Summit needed Chatham County to rezone the parcels. [JA23, JA239, JA1822]

In May 2024, Summit submitted two rezoning applications to Chatham County. [JA760, JA1826] The county board of commissioners discussed the applications at its August 19, 2024 meeting. The commissioners heard public comments, asked questions, and then referred the application to the county planning board. [JA27-29, JA1826-1827]

The planning board discussed Summit's application at its meetings on September 3 and October 1, 2024. [JA29, JA35, JA1827, JA1832] Following public comment, the planning board flagged four concerns with the rezoning proposal: (1) traffic; (2) rural preservation; (3) tax revenue; and (4) the proposed church's size. Based on these concerns, the planning board declared the proposal inconsistent with Plan Chatham. [JA37-39, JA1832-1833]

At the December 16, 2024 meeting, the board of commissioners considered whether to legislatively rezone the parcels as Summit requested. [JA40, JA1833] The commissioners unanimously denied the

proposal. [JA44, JA1835] The board noted that the rezoning would be inconsistent with Plan Chatham because it would not diversify the tax base or create quality jobs. [JA714, JA1835]

\* \* \*

Approximately two months later, on February 14, 2025, Summit sued Chatham County for alleged RLUIPA violations. [JA1836] In its complaint, Summit alleged that Chatham County placed a substantial burden[1] on its religious exercise when it declined Summit's rezoning application. For relief, Summit asked for the court to "require the County to approve Summit Church's rezoning request and its associated site plan." [JA8, JA45-48]

Summit petitioned for a preliminary injunction to prohibit Chatham County from denying its request for rezoning, along with a mandatory injunction requiring Chatham County to rezone. [JA751-753, JA1836] Chatham County opposed the petition. [JA1836; DE 16] It asserted that rezoning is a legislative act under Chatham County's ordinance, and North Carolina law prevents an article III court from

---

[1] Summit also sued under RLUIPA for a "less than equal terms" claim, a "discrimination on the basis of religion" claim, and an "unreasonable limitation" claim. [JA49-58]

requiring local governments to legislate, even under RLUIPA. [JA1744-1747, JA1865]

On June 20, 2025, the district court granted Summit a preliminary injunction, ruling that Summit showed a likelihood of success on its substantial burden claim. The court entered an injunction that enjoined Chatham County from denying Summit's rezoning application. [JA1867]

On July 18, 2025, Chatham County appealed from the district court order granting Summit's petition for preliminary injunction. [JA1868]

## ARGUMENT SUMMARY

The separation of powers doctrine and the tenth amendment's anti-commandeering doctrine both prevent federal courts from ordering local governments to legislate. At the same time, RLUIPA allows a district court to enjoin municipal decisions that impose a "substantial burden" on religious exercise. At the intersection of these principles lies an unanswered question: Can a federal court use RLUIPA to order a local government to engage in legislative zoning?

Chatham County believes this is an issue of first impression. This Court should answer the question "no," and hold that although RLUIPA provides a vehicle to require administrative and quasi-judicial land use

approvals, courts cannot use RLUIPA to force local governments to rezone property because zoning is a legislative function.

* * *

Under North Carolina law, conditional zoning is "entirely a legislative act." *Summers v. City of Charlotte*, 562 S.E.2d 18, 24 (N.C. Ct. App. 2002). This is because zoning decisions involve discretion by elected bodies to regulate land use in the interest of public health, safety, morals, and general welfare. *See generally Id*. In turn, North Carolina courts have held that they lack the power to direct a legislative body to enact or amend zoning laws. *Marriott v. Chatham Cnty*, 654 S.E.2d 13, 16 (N.C. Ct. App. 2007).

RLUIPA does not override this constitutional limitation. While RLUIPA imposes strict-scrutiny review on substantial burdens to religious exercise, it does not authorize federal courts to compel local legislative zoning changes. Indeed, this Court has observed that "Congress did not intend for RLUIPA to undermine the legitimate role of local governments in enacting and implementing land use regulations." *Andon, LLC v. City of Newport News,* 813 F.3d 510, 516 (4th Cir. 2016).

RLUIPA's constitutionality rests in part on this feature. It preempts discriminatory land-use regulations but does not force state or local legislative action. *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1242-1243 (11th Cir. 2004). Using RLUIPA as a tool to order a rezoning would intrude upon local legislative authority and contradict the constitutional balance between federal and state sovereignty. The court's role is to invalidate unlawful zoning actions, not to compel legislation through rezoning mandates.

For these reasons, this Court should reverse the preliminary injunction because RLUIPA does not allow the district court to order Chatham County to undertake or refrain from conditional rezoning, a purely legislative act.

## ARGUMENT

I. <u>Standard of review</u>

This Court reviews an injunction for abuse of discretion. *Redeemed Christian Church of God (Victory Temple) Bowie v. Prince George's Cty.*, 17 F.4th 497, 506 (4th Cir. 2021). A district court abuses its discretion when it grants an injunction based on a legal mistake. *Id.* (citing *SAS Inst., Inc. v. World Programming Ltd.*, 952 F.3d 513, 523 (4th Cir. 2020).

Standing is a legal question. It refers to the court's ability to redress a plaintiff's injury. *DaimlerChrysler Corp.* v. *Cuno*, 547 U. S. 332, 342 (2006). If the court cannot redress the injury, then the plaintiff lacks standing. *California v. Texas*, 593 U.S. 659, 673 (2021) And if the plaintiff lacks standing, then the court lacks jurisdiction to provide any relief, including a preliminary injunction. *N. Va. Hemp & Agric., LLC v. Commonwealth*, 125 F.4th 472, 489 (4th Cir. 2025).

Here, Summit Church lacks standing to sue for an injunction that requires Chatham County to conduct conditional rezoning, a legislative function. As such, this Court should revere and vacate the preliminary injunction.

II.    RLUIPA does not undermine local legislative zoning decisions.

As stated, the issue in this case is whether a federal court can use RLUIPA to order North Carolina municipalities to approve a conditional rezoning request, a legislative act under North Carolina law. As best Chatham County can tell, the issue is novel.

The discussion surrounds three legal principles. The first is conditional zoning and rezoning in North Carolina, including its procedure and treatment by the courts. The second is RLUIPA, including

its history and purpose. And the third is separation of powers and the anti-commandeering doctrine, including the interplay between federal courts and local lawmaking bodies.

These three principles, when reconciled, show that federal courts cannot use RLUIPA to force local governments to engage in conditional rezoning because rezoning is a legislative act beyond judicial intervention.

A.    Conditional zoning is a legislative act in North Carolina.

North Carolina zoning decisions fall into one of four distinct categories: quasi-judicial, administrative, advisory, and legislative. *County of Lancaster v. Mecklenburg County*, 434 S.E.2d 604, 612 (N.C. 1993). North Carolina courts have described the first category, quasi-judicial zoning decisions, as those in which local officials weigh evidence, find facts, and render a decision that is judicial in nature. *Id*. Quasi-judicial decisions spawn winners and losers. *Id*. Examples include variances, special or conditional use permits, and appeals from administrative determinations. *Id*. (citing *Humble Oil & Refining Co. v. Board of Aldermen*, 202 S.E.2d 129 (N.C. 1974); *Jarrell v. Board of Adjustment*, 128 S.E.2d 879 (N.C. 1963)).

Courts have long held that the adoption or amendment of zoning regulations and changes in zoning classifications fall into the last category, legislative. *In re Markham*, 131 S.E.2d 329, 334 (N.C. 1963); *Brown v. Town of Davidson*, 439 S.E.2d 206, 208 (N.C. Ct. App. 1994). As such, local rezoning choices are a legislative decision,[2] not an administrative or quasi-judicial one. *Summers*, 562 S.E.2d at 24 (citing *Kirk v. Davidson Cnty.*, 551 S.E.2d 186, 190 (N.C. Ct. App. 2001)). Here's why.

North Carolina municipalities have the statutory authority to divide territories within their jurisdiction into various zoning districts, including conditional use districts. *See generally* N.C.G.S. § 160D, *et seq*. *See also Massey v. City of Charlotte*, 550 S.E.2d 838, 844-45 (N.C. Ct. App. 2001) (discussing § 160D's precursor). Conditional use districts include specific conditions or restrictions as part of the zoning district. N.C.G.S. § 160D-703.

---

[2] Indeed, Chapter 160D defines "legislative decision" as

> The adoption, amendment, or repeal of a regulation under this Chapter or an applicable local act. The term also includes the decision to approve, amend, or rescind a development agreement consistent with the provisions of Article 10 of this Chapter.

N.C.G.S. § 160D-102(19).

Even before the General Assembly codified conditional zoning within the North Carolina General Statutes, the North Carolina Supreme Court approved conditional use zoning in concept. *Chrismon v. Guilford County*, 370 S.E.2d 579, 587 (N.C. 1988). In *Chrismon*, the North Carolina Supreme Court described conditional use zoning as a dual procedure that includes both a legislative process to decide zoning, and a concomitant quasi-judicial process to decide whether to issue a conditional or special use permit. *Id*. at 587.

After the General Assembly codified conditional zoning, North Carolina courts recognized that the process is, in fact, purely legislative. In doing so, the courts recognized local boards do not need to use a quasi-judicial process for conditional rezoning decisions. *Massey*, 550 S.E.2d at 842 (discussing *Chrismon*). The decisions, instead, are rooted in discussion, deliberation, and compromise. *Massey*, 550 S.E.2d at 842. This process allows local boards to be forward thinking in conditional zoning and rezoning choices. *Id*. As a collective, these observations have led North Carolina courts to hold that conditional rezoning[3] is "entirely

_____

[3] Chapter 160D defines "[c]onditional zoning" as "[a] legislative zoning map amendment with site-specific conditions incorporated into the zoning map amendment."

a legislative act." *Summers*, 562 S.E.2d at 24 (citing *Massey*, 550 S.E.2d at 844-45).

Because local rezoning is a legislative act, North Carolina courts "do not possess the power to amend the zoning regulations." *Godfrey v. Zoning Bd. of Adjustment*, 344 S.E.2d 272, 276 (N.C. 1986). To be sure, courts can decide whether a zoning ordinance is lawful and whether a zoning decision comports with the requisite procedure. *Id*. But courts do not have the "power to determine the ultimate zoning classification" or "direct a legislative body to enact legislation." *Id*. (internal citations omitted). This is because "[z]oning is properly a legislative function, and courts are prevented by the doctrine of separation of powers from invasions of this field." *Id*. *See also Marriott*, 654 S.E.2d at 16 (holding that although "courts are authorized to interpret and declare the law, the judicial branch has no authority to direct a legislative body to enact legislation").

B.   RLUIPA cannot be used to mandate local legislative action.

RLUIPA provides, in part, that "no government shall impose or implement a land use regulation in a manner that imposes a substantial burden" on a religious group's exercise, unless the government can satisfy

strict scrutiny. 42 U.S.C. § 2000cc(a)(1). The statute applies when "a government makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved." 42 U.S.C. § 2000cc(a)(2)(C).

RLUIPA's purpose is clearer when viewed in its historical context.

In *Employment Division, Dept. of Human Resources v. Smith*, the Supreme Court held that strict scrutiny did not control first amendment challenges to general laws of neutral applicability. 494 U.S. 872, 884-90 (1992). Congress responded with the Religious Freedom Restoration Act of 1993, known as RFRA. 42 U.S.C. § 2000bb *et seq*. RFRA purported to reinstate the strict scrutiny standard in first amendment claims. *See generally id*. Yet four years after its passage, the Supreme Court held that RFRA was unconstitutional as applied to the states. *City of Boerne v. Flores*, 521 U.S. 507, 536 (1997).

Congress responded again, this time with RLUIPA. RLUIPA largely parallels RFRA, but it only covers laws concerning land use and institutionalized persons. *See* 42 U.S.C. § 2000cc-1(a). *See also Madison v. Riter*, 355 F.3d 310, 315 (4th Cir. 2003) (discussing RLUIPA's development following *Smith* and *Boerne*).

Although RLUIPA addresses land use, Congress or federal courts may not dictate local zoning decisions. *Andon,* 813 F.3d at 516. This Court has recognized that "the language of RLUIPA demonstrates that Congress did not intend for RLUIPA to undermine the legitimate role of local governments in enacting and implementing land use regulations." *Id. See also Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 355 (2nd Cir. 2007) (observing that "[w]e do not believe RLUIPA directly compels states to require or prohibit any particular acts.").

C.  <u>RLUIPA comports with the Tenth Amendment and separation of powers principles because it does not force local legislation</u>.

Courts have held that RLUIPA is constitutional because it doesn't allow federal courts to force local legislation.

For instance, the Tenth Amendment states that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people" This amendment embodies federalism, which recognizes the dual sovereignty of the federal and state governments. *Murphy v. NCAA*, 584 U.S. 453, 470 (2018).

A key component of this principle is the anti-commandeering doctrine, which prohibits Congress from directing the states to pass certain legislation. *Murphy*, 584 U.S. at 479-80. *See also Printz v. United States*, 521 U.S. 898, 925 (1997); *New York v. United States*, 505 U.S. 144, 156-57 (1992). The Eleventh Circuit has held that RLUIPA does not offend the anti-commandeering doctrine because it does not order local governments to enact specific land use ordinances. *Midrash Sephardi*, 366 F.3d at 1242-1243.[4] The corollary is that RLUIPA would violate the anti-commandeering clause, as applied, if used to order local governments to enact land use ordinances. *See generally id.*

This understanding leads into the separation of powers doctrine. Federal courts have the power to decide whether acts of Congress are constitutional, or whether federal statute preempts state law. *Moore v. Harper*, 600 U.S. 1, 19-20 (2023); *Haaland v. Brackeen*, 599 U.S. 255, 287 (2023). Even so, federal courts do not have the constitutional power to order local governments to legislate. *Smith & Lee Assocs. v. City of*

---

[4] The Seventh, Ninth, and Eleventh Circuits have arrived at the same conclusion in institutional persons RLUIPA cases. *Benning v. Georgia*, 391 F.3d 1299, 1309 (11th Cir. 2004); *Charles v. Verhagen*, 348 F.3d 601, 609-10 (7th Cir. 2003); *Mayweathers v. Newland*, 314 F.3d 1062, 1069 (9th Cir. 2002).

*Taylor*, 102 F.3d 781, 797 (6th Cir. 1996) (citations omitted). Such choices rest with local government, not Congress or Article III courts. *Id. See also Mi Familia Vota v. Abbott,* 977 F.3d 461, 470 (5th Cir. 2020); *M.S. v. Brown,* 902 F.3d 1076, 1087 (9th Cir. 2018); *Eubanks v. Wilkinson*, 937 F.2d 1118, 1128 (6th Cir. 1991).

* * *

Together, these principles show that federal courts can strike down zoning ordinances that offend RLUIPA, but they cannot use RLUIPA to require local governments to rezone. That outcome tracks with this Court's RLUIPA precedent, as well as its precedent on legislative zoning in a general sense. This Court has never required a local government to zone or rezone as a remedy for an RLUIPA violation.

III.  RLUIPA precedent does not support an injunction that directs Chatham County to zone for Summit Church's benefit.

This Court's RLUIPA decisions do not cabin the plaintiff's requested relief as legislative or quasi-judicial in nature. This distinction is critical though as it dictates whether the relief offends separation of powers.

A. <u>The United States Supreme Court has held that zoning is a legislative function</u>.

The United States Supreme Court has distinguished between legislative decisionmaking and quasi-judicial decisionmaking. *See e.g., D.C. Court of Appeals v. Feldman*, 460 U.S. 462, 465 (1983). Legislative actions "[look] to the future and [change] existing conditions by making a new rule to be applied thereafter to all or some part of those subject to its power." *Id.* at 479 (quoting *Prentis v. Atlantic Coast Line Co.*, 211 U.S. 210, 226 (1908)). Quasi-judicial actions, by contrast, are retrospective and involve applying existing laws to past or present facts. *Id.*

With these definitions in mind, the Supreme Court held 100 years ago that local zoning is a legislative act. *Euclid v. Ambler Realty Co.*, 272 U.S. 365, 389 (1926). *See also Belle Terre v. Boraas,* 416 U.S. 1, 9-10 (1974). This is because zoning reflects a local government's plan for future land use. *Euclid*, 272 U.S. at 389. *Id.* Courts can review whether such actions are arbitrary, irrational, or unrelated to public welfare. *Id.* And while a court may invalidate a zoning decision on these grounds, it cannot substitute its judgment for the local board's authority. *Id.*

\* \* \*

This Court has allowed RLUIPA relief when the zoning ordinance permitted a church, and the plaintiff wanted an injunction ordering the government to approve the building application. *See e.g., Redeemed Christian Church of God (Victory Temple) Bowie v. Prince George's County,* 17 F.4th 497 (4th Cir. 2021); *Jesus Christ is the Answer Ministries, Inc. v. Balt. Cty.*, 915 F.3d 256, 261 (4th Cir. 2019); *Bethel World Outreach Ministries v. Montgomery County Council*, 706 F.3d 548 (4th Cir. 2013); *Reaching Hearts Int'l, Inc. v. Prince George's County*, No. 08-2281, 368 Fed. Appx. 370, 371 (4th Cir. March 3, 2010) (unpublished). The challenged action in those cases was quasi-judicial in nature.

On the contrary, this Court has declined to find an RLUIPA violation if the zoning ordinance did not permit the church, and the local authority declined to change that designation. *Andon,* 813 F.3d 510; *Canaan Christian Church v. Montgomery Cnty.*, 29 F.4th 182, 195 (4th Cir. 2022). To be sure, these decisions turned on substance, not procedure. And the parties did not raise separation of powers arguments. Still, these precedents are informative in illustrating how courts apply RLUIPA consistent with constitutional restraints.

B.  This Court has never used RLUIPA to order a local government to embark on legislative zoning.

In *Redeemed*, the plaintiff purchased property to build a new church. *Id*. 17 F.4th at 501. The property's zoning designation permitted churches by right. *Id*. To secure approval, the plaintiff needed an updated sewer classification. *Id*. The county denied it, and the plaintiff sued for an RLUIPA violation. *Id*. at 504. The district court ruled for the church and entered an injunction that prevented the county from denying the church's sewer application. *Id*. at 505-06.

The county appealed. *Redeemed*, 17 F.4th at 506. The primary issue was whether the sewer application process was a land use restriction under RLUIPA, which is not an issue here as Chatham County concedes that question. *Id*. at 507-08. This Court held that it was and affirmed a verdict. *See generally id*.

The county in *Redeemed* did not raise a separation of powers argument. *See generally Redeemed*, 17 F.4th 497. And that argument would seem an ill-fit given: (1) the zoning ordinance allowed churches when the plaintiff bought the property, and (2) the injunction ordered the county to approve a sewer application, not to perform legislative rezoning. *See generally id*.

Other RLUIPA cases before this Court involved properties zoned for churches, but additional zoning ordinance terms hindered the plaintiffs' development efforts. *See Jesus Christ is the Answer Ministries, Inc.*, 915 F.3d at 261; *Reaching Hearts*, No. 08-2281, 368 Fed. Appx. at 371. Like with *Redeemed*, these cases do not invoke separation of powers concerns because the plaintiff was not asking the local authority to legislate. *See generally id.*

Then there's *Bethel*. In that case, the zoning ordinance allowed a church when the plaintiff bought the property, but the county changed the ordinance after the fact to prohibit a church. 706 F.3d at 553-54. The court had to decide whether these subsequent ordinances gave rise to an RLUIPA claim; not whether RLUIPA can force the government to legislate. *See generally id.*

\* \* \*

In cases where the zoning ordinance did not allow a church at the outset, this Court has declined to afford RLUIPA relief, albeit on substantive grounds. *Andon*, 813 F.3d at 515; *Canaan*, 29 F.4th at 195.

*Andon*, nonetheless, is worth considering further, even though it is not a separation of powers case. The plaintiff bought property to build a

church, even though it knew that local ordinance did not allow a church. 813 F.3d at 515. When the county denied its variance permit, a quasi-judicial decision, it sued for an RLUIPA violation. *Id*. This Court held that the plaintiff did not make out an RLUIPA violation in substance. *Id*.

This holding, nonetheless, included an observation with bearing on the separation of powers questions raised in this case. In explaining its decision, this Court noted that to force a local government to accept a church where it wasn't allowed would "usurp the role of local governments in zoning matters …." *Aldon*, 813 F.3d at 516. This observation intimates that RLUIPA does not function as an end-run around local legislation. RLUIPA, after all, doesn't say that plaintiffs have a right to build a church wherever they want. *See Grace United Methodist Church v. City of Cheyenne,* 451 F.3d 643, 654 (10th Cir. 2006) (holding that while a religious institution has the right to operate a daycare, RLUIPA gives "no right to build its daycare exactly where it pleases."); *Civil Liberties for Urban Believers v. City of Chicago*, 342 F.3d 752, 763 (7th Cir. 2003) (holding that "RLUIPA does not require a municipality to grant a church a special use permit allowing it to locate wherever it wishes").

C. <u>This Court's recent precedent confirms that zoning is a local legislative act beyond the federal judiciary's sphere</u>.

Two years ago, this Court restated its deference to local legislative zoning in *Sas Assocs. 1, LLC v. City Council for the City of Chesapeake*, 91 F.4th 715 (4th Cir. 2024). Although not an RLUIPA case, *Sas Associates* expresses larger thoughts about local zoning and where federal courts fit in. Those comments resonate in RLUIPA cases too.

The plaintiffs were developers who owned parcels in Chesapeake, Virginia. *Sas Assocs.*, 91 F.4th at 718. They wanted to combine their parcels into a 90-acre development that included single and multi-family housing, commercial space, and a conservation district. *Id*. The parcels, however, were not zoned for this use. *Id*. The developers petitioned the local government to rezone[5] the parcels, and the local government declined to do so. *Id*. at 718-19. The developer then sued for an equal protection violation, which the district court dismissed. *Id*. at 719.

In affirming, this Court recognized that local governments are primarily responsible for zoning decisions, as these matters affect their

---

[5] In Virginia, like in North Carolina, enactment or amendment of zoning ordinances, including rezoning, is a legislative function, not a quasi-judicial one. *R.G. Moore Bldg. Corp. v. Committee for Repeal of Ordinance R(C)-88-13*, 391 S.E.2d 587, 590-591 (Va. 1991).

communities and fall within their historic duties. *Sas Assocs.*, 91 F.4th at 720 (citing *Gardner v. City of Baltimore Mayor & City Council*, 969 F.2d 63, 67 (4th Cir. 1992)). Federal court intervention in zoning "impairs the constitutional architecture in two ways." *Id*.

First, zoning challenges often ask the federal government to step into local matters. *Sas Assocs.*, 91 F.4th at 720. Local lawmakers have direct connections with affected communities. *Id*. Federal judges, on the other hand, do not. *Id*.

Second, lawsuits that challenge zoning decisions seek judicial intervention in legislative policy decisions. *Sas Assocs.*, 91 F.4th at 720. "Zoning decisions," this Court recognized, "generally turn on questions of public policy about how to organize a community." *Id*. Federal courts are less responsive than local democratic processes when it comes to addressing community concerns. *Id*.

These comments frame the discussion here. Although this Court in *Sas Associates* went on to consider the equal protection question before it, the above comments demonstrate why a district court upsets the separation of powers when it orders a local municipality to engage legislative zoning.

D. <u>The district court lacks the power to order Chatham County to undertake zoning legislation for Summit Church</u>.

RLUIPA does not permit the district court to order Chatham County to engage in conditional rezoning for Summit Church's benefit. Such relief would direct the county to enact legislation, in direct conflict with separation of powers and federalism principles that structure state and federal government.

In cases like *Redeemed* and its counterparts, the local ordinances permitted churches as a by-right use, and the dispute involved secondary permitting processes that the court could decide without forcing legislative action. 17 F.4th 497; *Jesus Christ is the Answer Ministries*, 915 F.3d 256; *Reaching Hearts*, No. 08-2281, 368 Fed. Appx. 370. Here, the property optioned by Summit Church does not permit churches by-right. To change that, Chatham County must legislate. *See e.g., Summers*, 562 S.E.2d at 24; *D.C. Court of Appeals*, 460 U.S. at 465. Article III courts and federal statutes cannot compel state or local legislatures to do that.

Summit Church argued to the district court that Chatham County's argument, if adopted, would render RLUIPA toothless by allowing local governments to avoid the statute by structuring uses as conditional. That

notion misunderstands both RLUIPA and Chatham County's zoning scheme. Chatham County already allows churches as a matter of right in certain zoning districts, and it permits churches in conditional districts upon issuance of a quasi-judicial special use permit. RLUIPA does not grant religious institutions a right to build wherever they prefer. Rather, it ensures that government treats religious uses and similar secular uses the same.

Zoning is a local matter. Local officials are in the best position to zone and rezone property within their jurisdiction. Chatham County is free to designate certain areas for by-right church construction and others for conditional use, or even to revise those classifications down the road. And if an ordinance is unconstitutional or preempted, then a federal court can say so. But a federal court cannot command Chatham County to affirmatively legislate by undertaking legislative conditional rezoning. And that is what Summit Church is asking for here. It is not asking to reverse a quasi-judicial decision. It is asking Chatham County to convene its legislative body and write a new zoning ordinance that lets Summit Church build where it wants to. That request violates the separation of powers doctrine and the tenth amendment's anti-commandeering doctrine. The district court, in turn, cannot grant the requested relief.

## CONCLUSION

RLUIPA provides a remedy for burdensome land-use regulations, but it does not authorize federal courts to make local governments legislate. Conditional rezoning in North Carolina is a legislative act. Federal courts, bound by separation-of-powers and federalism principles, cannot require Chatham County to enact new zoning law. Nothing in RLUIPA overrides these constitutional limits.

The district court's preliminary injunction crosses that line. By effectively directing Chatham County to create a new zoning classification, the order intrudes into the legislative sphere that belongs solely to elected local officials. This Court should reverse the district court and vacate the injunction.

This the 30th day of January 2026.

CRANFILL SUMNER LLP

/s/ Steven A. Bader
Steven A. Bader
N.C. State Bar No. 55931
Email: sbader@cshlaw.com
Post Office Box 27808
Raleigh, NC  27611
Telephone: (919) 828-5100

Patrick H. Flanagan
Email:  phf@cshlaw.com
Samantha M. Owens
Email: sowens@cshlaw.com
Post Office Box 30787
Charlotte, NC  28230
Telephone: (704) 332-8300
*Attorneys for Appellant Chatham County, North Carolina Board of Commissioners*

## CERTIFICATE OF COMPLIANCE

1.    This document complies with type-volume limits because excluding the parts of the document exempted by Fed. R. App. P. 32(f): (cover page, disclosure statement, table of contents, table of citations, signature block, certificates of counsel, appendix, attachments):

this document contains 4,809 words.

2.    This document complies with the typeface requirements because:

it has been prepared in a proportional spaced typeface using Microsoft Word in 14-point Century Schoolbook.

Dated:  January 30, 2026

BY:    /s/ Steven A. Bader
STEVEN A. BADER

*Counsel for Defendant-Appellant*