# In the United States Court of Appeals for the Fourth Circuit

THE SUMMIT CHURCH-HOMESTEAD HEIGHTS BAPTIST CHURCH, INC.,
*Plaintiff-Appellee,*

v.

CHATHAM COUNTY, NORTH CAROLINA BOARD OF COMMISSIONERS,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Middle District of North Carolina at Greensboro
No. 1:25-cv-00113-UA-JLW, Honorable William L. Osteen

## BRIEF OF PLAINTIFF-APPELLEE

Erica N. Peterson
Nicole R. Johnson
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, D.C. 20037

Elbert Lin
  *Counsel of Record*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
elin@hunton.com

*Counsel for Plaintiff-Appellee*
[Additional counsel listed on the next page]

Jeffrey C. Mateer
David J. Hackner
Jeremiah G. Dys
Ryan N. Gardner
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075

Joseph L. Olson
MICHAEL BEST & FRIEDRICH LLP
790 North Water Street, Suite 2500
Milwaukee, WI 53202

Keith E. Richardson
Michael G. Schietzelt, Jr.
MICHAEL BEST & FRIEDRICH LLP
4509 Creedmoor Road, Suite 501
Raleigh, NC 27612

# UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

## DISCLOSURE STATEMENT

- In civil, agency, bankruptcy, and mandamus cases, a disclosure statement must be filed by **all** parties, with the following exceptions: (1) the United States is not required to file a disclosure statement; (2) an indigent party is not required to file a disclosure statement; and (3) a state or local government is not required to file a disclosure statement in pro se cases. (All parties to the action in the district court are considered parties to a mandamus case.)
- In criminal and post-conviction cases, a corporate defendant must file a disclosure statement.
- In criminal cases, the United States must file a disclosure statement if there was an organizational victim of the alleged criminal activity. (See question 7.)
- Any corporate amicus curiae must file a disclosure statement.
- Counsel has a continuing duty to update the disclosure statement.

No. __25-1832__    Caption: __The Summit Church-Homestead Heights Baptist Church, Inc. v.__
Chatham County, North Carolina Board of Commissioners

Pursuant to FRAP 26.1 and Local Rule 26.1,

__The Summit Church-Homestead Heights Baptist Church, Inc.__
(name of party/amicus)

who is _____appellee_____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)

1. Is party/amicus a publicly held corporation or other publicly held entity?  ☐YES ☑NO

2. Does party/amicus have any parent corporations?  ☐YES ☑NO
   If yes, identify all parent corporations, including all generations of parent corporations:

3. Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?  ☐YES ☑NO
   If yes, identify all such owners:

4.    Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation?                  ☐YES ☑NO
If yes, identify entity and nature of interest:

5.    Is party a trade association? (amici curiae do not complete this question)     ☐YES ☑NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.    Does this case arise out of a bankruptcy proceeding?                  ☐YES ☑NO
If yes, the debtor, the trustee, or the appellant (if neither the debtor nor the trustee is a party) must list (1) the members of any creditors' committee, (2) each debtor (if not in the caption), and (3) if a debtor is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of the debtor.

7.    Is this a criminal case in which there was an organizational victim?        ☐YES ☑NO
If yes, the United States, absent good cause shown, must list (1) each organizational victim of the criminal activity and (2) if an organizational victim is a corporation, the parent corporation and any publicly held corporation that owns 10% or more of the stock of victim, to the extent that information can be obtained through due diligence.

Signature: /s/ Elbert Lin                              Date:      March 23, 2026

Counsel for: The Summit Church-Homestead
                   Heights Baptist Church, Inc.

- 2 -

Print to PDF for Filing

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................. iii

INTRODUCTION ...........................................................................1

STATEMENT OF THE ISSUES.........................................................3

BACKGROUND .............................................................................3

SUMMARY OF ARGUMENT ...........................................................9

STANDARD OF REVIEW ..............................................................12

ARGUMENT .................................................................................12

I.   There is no exception to judicial review under RLUIPA for state-law-
     defined "legislative zoning decisions." ...........................................14

     A.   RLUIPA applies to the County's denial of Summit's rezoning
          applications under the plain text of RLUIPA and decisions of
          this Court. ..................................................................14

     B.   It is irrelevant that North Carolina law defines conditional
          rezoning as a legislative act..............................................17

     C.   There is no constitutional impediment to federal courts
          reviewing "legislative" zoning decisions...............................20

II.  The narrower argument that the district court lacked jurisdiction to
     order the County to *grant* Summit's applications also fails..........................22

     A.   This Court cannot reach the question of the district court's
          authority to *require* rezoning...........................................22

     B.   The district court had the authority to require rezoning even
          though it did not do so....................................................23

III. This Court should affirm the merits of the district court's preliminary
     injunction order..........................................................29

     A.   The County has waived any argument on the merits of the
          preliminary injunction. ...................................................29

B.    In any event, the district court correctly concluded that Summit met all four requirements for a preliminary prohibitory injunction. ..................................................................................31

       1.    Summit is likely to succeed on the merits of its substantial burden claim. .......................................................31

             a.    The County's denial of Summit's applications imposed a substantial burden on religious exercise. ......32

             b.    The County created the impediment to Summit's religious exercise. ..........................................................33

             c.    The County failed to meet the requirements of strict scrutiny. ................................................................34

       2.    Irreparable harm, the balance of the equities, and the public interest supported an injunction. ...................................35

CONCLUSION ................................................................................................36

STATEMENT REGARDING ORAL ARGUMENT ............................................36

CERTIFICATE OF COMPLIANCE...................................................................38

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Alexander v. Holden,*
  66 F.3d 62 (4th Cir. 1995) ...............................................................29

*Alive Church of the Nazarene, Inc. v. Prince William Cnty.,*
  59 F.4th 92 (4th Cir. 2023) ..............................................................32

*Andon, LLC v. City of Newport News,*
  813 F.3d 510 (4th Cir. 2016) ............................................................33

*Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just
  Born II, Inc.,*
  888 F.3d 696 (4th Cir. 2018) ............................................................12

*Bethel World Outreach Ministries v. Montgomery Cnty. Council,*
  706 F.3d 548 (4th Cir. 2013) ...............................................19, 24, 33

*Canaan Christian Church v. Montgomery Cnty.,*
  29 F.4th 182 (4th Cir. 2022) ........................................................31, 32

*Christian Legal Soc'y v. Walker,*
  453 F.3d 853 (7th Cir. 2006) ............................................................36

*Church of Our Savior v. City of Jacksonville Beach,*
  69 F. Supp. 3d 1299 (M.D. Fla. 2014)...............................................23

*City of Boerne v. Flores,*
  521 U.S. 507 (1997)..........................................................................20

*D.C. Court of Appeals v. Feldman,*
  460 U.S. 462 (1983)..........................................................................19

*Elrod v. Burns,*
  427 U.S. 347 (1976)..........................................................................35

*Emp. Div., Dep't of Hum. Res. of Oregon v. Smith,*
  494 U.S. 872 (1990)..........................................................................21

*Euclid v. Ambler Realty Co.*,
272 U.S. 365 (1926) ..................................................................................19

*Fortress Bible Church v. Feiner*,
694 F.3d 208 (2d Cir. 2012) ...............................................16, 18, 23

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) ...........................................................................20, 21

*Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*,
546 U.S. 418 (2006) ..................................................................................34

*Grayson O Co. v. Agadir Int'l LLC*,
856 F.3d 307 (4th Cir. 2017) ................................................................30

*Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*,
326 F. Supp. 2d 1140 (E.D. Cal. 2003), *aff'd*, 456 F.3d 978 (9th
Cir. 2006) .........................................................................................23, 24

*Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*,
456 F.3d 978 (9th Cir. 2006) .......................................................15, 20

*Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*,
452 U.S. 264 (1981) ..................................................................................29

*Holt v. Hobbs*,
574 U.S. 352 (2015) ..................................................................................34

*IGEN Int'l, Inc. v. Roche Diagnostics GmbH*,
335 F.3d 303 (4th Cir. 2003) ................................................................30

*In re Zetia (Ezetimibe) Antitrust Litig.*,
7 F.4th 227 (4th Cir. 2021) ...........................................................22, 23

*Joseph v. United States*,
135 S. Ct. 705 (2014) ................................................................................30

*Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*,
684 F.3d 462 (4th Cir. 2012) ................................................................30

*Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*,
722 F.3d 591 (4th Cir. 2013) ................................................................30

*MicroStrategy Inc. v. Motorola, Inc.*,
245 F.3d 335 (4th Cir. 2001) ...............................................................12

*Midrash Sephardi, Inc. v. Town of Surfside*,
366 F.3d 1214 (11th Cir. 2004) ...............................................20, 22, 27

*Murphy v. NCAA*,
584 U.S. 453 (2018)..................................................11, 26, 28, 29

*New York v. United States*,
505 U.S. 144 (1992).......................................................................26

*Nken v. Holder*,
556 U.S. 418 (2009).......................................................................36

*Opulent Life Church v. City of Holly Springs*,
697 F.3d 279 (5th Cir. 2012) ....................................................35, 36

*Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*,
584 F. Supp. 2d 766 (D. Md. 2008), *aff'd*, 368 F. App'x 370 (4th
Cir. 2010) ....................................................................24, 33, 35, 36

*Redeemed Christian Church of God (Victory Temple) Bowie v. Prince
George's Cnty.*,
17 F.4th 497 (4th Cir. 2021) ...............................................*passim*

*Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*,
613 F.3d 1229 (10th Cir. 2010) .....................................................23

*Roe v. Dep't of Def.*,
947 F.3d 207 (4th Cir. 2020) ........................................................36

*SAS Assocs. 1, LLC v. City Council for City of Chesapeake*,
91 F.4th 715 (4th Cir. 2024) ....................................................21, 22

*SAS Inst., Inc. v. World Programming Limited*,
952 F.3d 513 (4th Cir. 2020) ........................................................12

*Schulman v. Axis Surplus Ins. Co.*,
90 F.4th 236 (4th Cir. 2024) ..........................................................29

*Smith & Lee Assocs., Inc. v. City of Taylor*,
102 F.3d 781 (6th Cir. 1996) .........................................................28

v

*Tandon v. Newsom*,
593 U.S. 61 (2021)............................................................................21

*Tucker v. Collier*,
906 F.3d 295 (5th Cir. 2018) ............................................................34

*United States v. Virginia*,
518 U.S. 515 (1996)..........................................................................34

*Vitkus v. Blinken*,
79 F.4th 352 (4th Cir. 2023) .............................................................31

*Westchester Day Sch. v. Vill. of Mamaroneck*,
504 F.3d 338 (2d Cir. 2007) .......................................................23, 27

## Statutes

42 U.S.C. § 2000cc .......................................................................8, 14

42 U.S.C. § 2000cc(a)(1) .............................................................21, 26

42 U.S.C. § 2000cc(a)(1)(A)..............................................................14

42 U.S.C. § 2000cc(a)(1)(B)...............................................................14

42 U.S.C. § 2000cc(a)(2)(C)...............................................................15

42 U.S.C. § 2000cc-3(g) ....................................................................18

42 U.S.C. § 2000cc-5(5) ....................................................................16

## Constitutions

U.S. Const. amend. X...........................................................................20

## Other Authorities

Black's Law Dictionary (11th ed. 2019) ............................................16

## **INTRODUCTION**

Congress enacted the Religious Land Use and Institutionalized Persons Act ("RLUIPA") more than 25 years ago to protect individuals, houses of worship, and religious institutions from discrimination by state and local governments. This case fits squarely within those protections. Summit Church ("Summit") applied to the Chatham County Board of Commissioners (the "County") to have certain parcels in Chatham County rezoned for purposes of building a new church. Throughout the application process, Summit faced sustained community opposition based on the fact that it was a church. *See, e.g.*, JA30, JA35, JA36, JA476–81. And one of the Commissioners said that "'Chatham County is not a place to call home for that size of a church.'" JA44, JA53. Ultimately, despite having recently approved plans for a substantially similar project on the same property, the County denied Summit's proposal. Summit challenged that decision in the district court, which rightly granted a preliminary injunction enjoining the denial of Summit's proposal. JA1866.

On appeal, the County tellingly does not challenge the merits of the district court's decision to grant Summit's motion for a preliminary injunction. It nowhere addresses the district court's conclusion that the County placed a substantial burden on Summit's religious exercise, that the County failed to meet strict scrutiny, or that Summit would suffer irreparable harm. Instead, the County tries to evade RLUIPA

1

entirely, arguing solely that "courts cannot use RLUIPA to force local governments to rezone property because zoning is a legislative function." County Br. 6.

What exactly the County means is unclear. The County seems to argue narrowly about the type of relief that can constitutionally be granted in a rezoning case, urging that while federal courts can "*invalidate* unlawful zoning actions," they may "not . . . *compel* legislation through rezoning mandates." *Id.* at 7 (emphases added). But the district court here did not mandate rezoning. So unless the County is asking for an improper advisory opinion, it may mean more broadly, as some language in its brief suggests, that rezoning in North Carolina is effectively exempt from RLUIPA because "rezoning is a legislative act beyond judicial intervention." *Id.* at 9. That is also what the County's amicus seems to say: a federal court cannot do *anything* under RLUIPA regarding whether the County does, or does not, rezone a parcel. IMLA Br. 14–17.

Regardless, both arguments lack merit. Taking the broader argument first, there is no exception to RLUIPA for zoning decisions that state law labels as "legislative acts." Under this Court's controlling case law, federal law governs what constitutes "zoning" reviewable by federal courts under RLUIPA. *Redeemed Christian Church of God (Victory Temple) Bowie v. Prince George's Cnty.*, 17 F.4th 497 (4th Cir. 2021). As this Court explained, holding otherwise would allow states and local governments to undermine RLUIPA.

To the extent the County actually intends to argue more narrowly that the district court lacked constitutional authority to *compel* the County to grant Summit's rezoning proposal, that argument fails for two reasons. As an initial matter, and as already noted, that issue is not before this Court. The district court expressly declined to grant a mandatory injunction; it only preliminarily enjoined the County from denying Summit's proposal. JA1867. Furthermore, even if this Court could reach that question, a mandatory injunction requiring the County to grant Summit's rezoning proposal would not violate the Tenth Amendment's anti-commandeering doctrine. Such an injunction merely carries out RLUIPA's preemptive effect, by directing the locality to "exempt[] [the] religious land use from [those] state laws [found to] substantially burden religious exercise without satisfying strict scrutiny." *Redeemed Christian*, 17 F.4th at 508 n.7.

## STATEMENT OF THE ISSUES

1. Whether RLUIPA applies at all to the County's decision to deny Summit's rezoning proposal.

2. Whether the district court's authority to order the County to approve Summit's proposal is before this Court, and if so, did the district court have such authority?

3. Whether the County waived any argument on the merits of the preliminary injunction, and if not, did the district court err in granting the injunction?

## BACKGROUND

Summit serves North Carolinians across the Raleigh-Durham-Chapel Hill ("Triangle") region with its thirteen campuses, guided by the ministerial principle

3

that no resident in that region should live more than fifteen minutes from a thriving evangelical church. JA10. The Chapel Hill Campus, which has held weekly services at East Chapel Hill High School since 2013, attracts around 800 attendees each week. JA12. Notably, 15 percent of those attendees commute at least half an hour from Chatham County, making the current location less accessible for a significant portion of the congregation. JA12. This reality, along with continued growth in attendance, prompted Summit to seek a new, permanent location for the Chapel Hill Campus.

In December 2023, Summit acquired—through an option to purchase by July 1, 2025—an interest in six undeveloped parcels along U.S. Highway 15-501 in Chatham County. JA23. Across the street from the six parcels is a shopping center with dining, retail, and professional offices. JA20. A Walmart, multiple office building complexes with commercial space, community centers, a grocery store, and numerous neighborhoods are all within approximately 3 miles. *Id*.

To build, Summit needed the Chatham County Commission to rezone the parcels. Just two years earlier, the parcels had been rezoned by the County Commission from a residential zone to a "Conditional District-Compact Community" for an active-adult (55+) community called "Herndon Farms." JA53. The Herndon Farms building proposal included 161 residential units and two commercial buildings, one a congregate care facility for independent living and the other a 10,000 square foot daycare. JA368. Because Herndon Farms did not submit

development plans by the deadline established by ordinance, its approval expired, leading to the land becoming available to Summit in 2023. JA1636.

In October 2023, Summit's planning and design representative—a company called Qunity, PA—arranged a pre-submittal meeting with review staff from the Chatham County Appearance Commission. JA23. Qunity and the County's Appearance Commission discussed whether the proposed church campus comported with Plan Chatham—the land use plan that had been adopted by the County Commission in 2017 and which included a Future Use Map. JA63–220. The Future Use Map divided the county into segments based on anticipated land development. The six parcels at issue sit in an area of the Future Use Map that explicitly considers churches as appropriate additions. JA21. During the meeting, the review staff expressed the opinion that Summit's project was consistent with Plan Chatham and the Future Use Map. JA24, JA27.

Summit proceeded to follow the rezoning process, which continued until the end of the year. In May 2024, Summit applied to the Planning Department seeking to have three parcels rezoned to Conditional District-Office & Institutional. JA24. And following a suggestion made by County staff at the pre-submittal meeting, Summit separately applied to restore the remaining three parcels to the residential zoning status, R-1, that was in place prior to the rezoning for Herndon Farms. JA24. Altogether, Summit's proposed plans maintained the rural character of the land by

preserving eighteen acres of forested land, a 440-foot setback from the highway (compared to the 40-foot municipal setback requirement), and a significant amount of open space. JA25.

A public hearing before the Chatham County Board of Commissioners followed in August 2024. The Zoning Administrator, who is responsible for enforcing the zoning ordinances, JA260, said at the hearing that Summit "'took special care' to preserve the viewshed from U.S. Highway 15-501," and that the Appearance Commission "was 'very happy with [Summit's] proposed landscaping plan'" for the property. JA27. But Karen Howard, the then-Vice Chair of the Board of Commissioners, opined that Summit was "'a poor fit for what we are envisioning'" and "'antithetical to real rural character preservation.'" JA28. At the conclusion of the hearing, Summit's applications were referred to the Planning Board. JA29.

The Planning Board held two public hearings in September and October. At the first, the Zoning Administrator stated that Summit's "'rezoning request is consistent with the comprehensive plan by being located within a compact community node where churches are specifically mentioned as part of the fabric of development.'" JA29–30. And during the Planning Board discussion, member Tony Mayer stated that "'there are not really any clear reasons to object'" to Summit's applications. JA30.

However, public comments—both oral and written—took a turn, referring derogatorily to Summit as a "'megachurch'" and largely targeting Summit's religious beliefs. JA30, JA476–81. One commentor welcomed Summit's proposed plan, stating that Summit invests in the lives of the people and the community they are located in. JA478. But many more expressed the view that "'[b]uilding a mega-church in this area runs contrary to' Chatham County's 'progressive, LGBTQ-friendly, and openminded atmosphere,'" JA35, and accused Summit of attempting to "'colonize'" Chatham County. JA36.

The Planning Board ultimately recommended denial of Summit's applications by a vote of 8-0. During deliberations at the second hearing prior to that vote, one member of the Board acknowledged the existence of RLUIPA and also raised the "concern" that denial of Summit's applications for certain reasons could be "discriminatory and a violation of the 1st Amendment." JA709–10.

Finally, the Board of Commissioners held a public hearing on Summit's applications on December 16, 2024. The Planning Director, standing in for the Zoning Administrator, first presented the proposal to the Board. Then, to open discussion of the proposal, Chair Howard immediately stated: "'I have heard nothing, and anticipate that I will hear nothing that is going to change my perspective on [Summit's applications]'" and that "'Chatham County is not a place to call home

for that size of a church.'" JA42, JA44. Vice Chair Katie Kenlan expressed "'full support'" for Chair Howard's remarks. JA43.

Following the hearing, the Board issued a non-consistency statement explaining its denial of Summit's applications. JA713–14. The Board stated that Summit's applications were "not consistent with the Chatham County Land Conservation and Development Plan." JA714. Further, the Board found Summit's applications were not "reasonable and in the public interest because the rezoning is not consistent by not providing a diversity in the tax revenue and does not provide more high-quality jobs for the area." *Id.*

This case followed. On February 14, 2025, Summit filed for a preliminary injunction requiring the County to grant its rezoning applications, 42 U.S.C. § 2000cc. JA751–53. When the County filed its opposition to that motion, it also filed a motion to dismiss, arguing that the district court did not have jurisdiction because the zoning decision was "a legislative decision that's not reviewable because it's purely legislative." JA1745. At a hearing on both motions, the district court denied the County's motion to dismiss from the bench, explaining that the text of RLUIPA plainly applies to zoning decisions. JA1752–53. Then in a written order, the district court granted "a preliminary prohibitory injunction that prevents [the County] from denying Plaintiff's land use proposal during the pendency of this suit,"

but declined to issue a "mandatory preliminary injunction …, which would require Chatham County to approve Plaintiff's proposal." JA1864–65.

The County timely filed its Notice of Appeal on July 18, 2025. JA1868–70. Summit did not cross-appeal the denial of a mandatory injunction.

## SUMMARY OF ARGUMENT

This Court should affirm the district court's preliminary injunction. Rather than addressing the merits of that decision, the County argues that "RLUIPA does not allow the district court to order Chatham County to undertake or refrain from conditional rezoning [as that is] a purely legislative act." County Br. 7. It is unclear how broadly the County intends that argument to reach. But whichever way the argument is construed, this Court should reject it. And because the County has waived any argument on the merits of the district court's reasoning—which was correct in any event—there is nothing more to do but affirm.

**I.** To the extent the County argues that zoning decisions that are deemed legislative acts under state law are categorically exempt from any judicial review under RLUIPA, that argument is squarely foreclosed by this Court's case law.

**A.** This Court has held that RLUIPA's terms—including what constitutes "zoning"—must be interpreted according to federal law, not state law. *Redeemed Christian*, 17 F.4th at 505–06. In that case, this Court rejected the same argument

9

seemingly presented here—i.e., that RLUIPA does not apply to rezoning or reclassification decisions that are labeled "legislative" under state law.

**B.** The County also appears to argue that applying RLUIPA to conditional rezoning would violate federalism principles protected by the Tenth Amendment. But RLUIPA has been upheld numerous times against such challenges as a valid exercise of Congress's authority under Section 5 of the Fourteenth Amendment.

**II.** To the extent the County is more narrowly arguing that this Court should reverse the preliminary injunction because the district court lacked authority to order the County to *approve* Summit's re-zoning applications, that argument fails, as well.

**A.** First, that argument is not properly before this Court. While the district court granted a prohibitory injunction against the County's *denial* of Summit's applications, it expressly declined to grant a mandatory injunction ordering the County to *approve* Summit's applications. As Summit has not cross-appealed that latter ruling, this Court cannot reach that issue.

**B.** Second, had the district court granted a mandatory injunction, there would have been no reversible error. The County argues that a district court ordering a county to approve a rezoning request violates the Tenth Amendment anti-commandeering doctrine because such a decision is deemed "legislative" under North Carolina law. But this Court's decision in *Redeemed Christian* affirmed an

injunction that ordered the approval of "[a] category change application" that indisputably "constitute[d] a legislative amendment." 17 F.4th at 502.

The County suggests that *Redeemed Christian* simply missed a glaring Tenth Amendment anti-commandeering problem with RLUIPA's substantial-burden provision. Not so. While Congress may not commandeer states and localities, it can preempt state and local laws. *Murphy v. NCAA*, 584 U.S. 453, 477 (2018). And *Redeemed Christian* made clear that it understood RLUIPA's substantial-burden provision to be just that: a valid preemption provision. "RLUIPA exempts religious land use from state laws when such laws substantially burden religious exercise without satisfying strict scrutiny." 17 F.4th at 508 n.7. In issuing a mandatory injunction, a federal district court is simply effectuating that preemption by clearing away state law found to have been discriminatorily applied.

**III.** Finally, this Court should reject any argument on the merits of the preliminary injunction for two reasons. First, by failing to raise such argument in its opening brief, the County has waived any argument on the merits of the district court's decision to grant Summit a preliminary injunction. Second, the district court was correct in concluding that Summit's substantial burden-claim satisfied all four preliminary injunction factors.

## STANDARD OF REVIEW

This Court reviews an order granting a preliminary injunction for abuse of discretion. *MicroStrategy Inc. v. Motorola, Inc.*, 245 F.3d 335, 339 (4th Cir. 2001). "'A district court abuses its discretion if it relies on an error of law or a clearly erroneous factual finding.'" *SAS Inst., Inc. v. World Programming Ltd.*, 952 F.3d 513, 523 (4th Cir. 2020) (citation omitted). Questions of statutory interpretation are reviewed de novo. *Bakery & Confectionary Union & Indus. Int'l Pension Fund v. Just Born II, Inc.*, 888 F.3d 696, 701 (4th Cir. 2018).

## ARGUMENT

The County's sole argument on appeal is that the district court exceeded its jurisdiction in issuing the preliminary injunction. According to the County, "this Court should reverse the preliminary injunction because RLUIPA does not allow the district court to order Chatham County to undertake or refrain from conditional rezoning, a purely legislative act." County Br. 7. "[A federal] court's role is to invalidate unlawful zoning actions," the County argues, "not to compel legislation through rezoning mandates." *Id.*

It is unclear how broadly the County intends this argument to reach. At times, its argument seems confined to the remedial question "whether a federal court can use RLUIPA to order North Carolina municipalities *to approve a conditional rezoning request*, a legislative act under North Carolina law." *Id.* at 8 (emphasis

12

added). But if so, the County is tilting at windmills. The district court declined to issue a "mandatory preliminary injunction … , which would require Chatham County to *approve* Plaintiff's proposal." JA1865 (emphasis added). Instead, it granted only "a preliminary prohibitory injunction that prevents [the County] from *denying* Plaintiff's land use proposal during the pendency of this suit." JA1864–65 (emphasis added).

That obvious tension with the record suggests that the County may intend the broader argument that no judicial relief of any kind is permitted, meaning in effect that rezoning in North Carolina is simply exempt from RLUIPA. Indeed, the County sweepingly claims at times that "rezoning is a legislative act beyond judicial intervention." County Br. 9; *see also id.* at 14 ("Congress or federal courts may not dictate local zoning decisions"). And the County's amicus is clearer still. It argues that under RLUIPA, federal courts are limited to "strik[ing] down laws it deems to be unconstitutional or prevent[ing] the executive from enforcing unconstitutional laws." IMLA Br. 16. But the statute "should" not, the amicus contends, permit a federal court to interfere in any way in a rezoning decision. *Id.*

Regardless of which tack the County intends, this Court should reject the County's argument. Turning to the broader version of the argument first, there is no categorical exception to judicial review under RLUIPA for "legislative" rezoning. As explained in Part I below, this Court rejected that very contention in *Redeemed*

*Christian*. As for the narrower version of the County's argument—that RLUIPA does not permit mandatory rezoning injunctions—it fails for the two reasons set forth in Part II below. For starters, that question is not properly before this Court because Summit has not cross-appealed the district court's denial of such an injunction. And furthermore, the County is wrong on the law.

All that being said, the County does make one thing very clear: it has nothing to say regarding the *merits* of the district court's decision below. Accordingly, any such arguments are waived. And in all events, the district court was correct as explained in Part III.

This Court should affirm.

## I. There is no exception to judicial review under RLUIPA for state-law-defined "legislative zoning decisions."

### A. RLUIPA applies to the County's denial of Summit's rezoning applications under the plain text of RLUIPA and decisions of this Court.

As relevant here, RLUIPA subjects to strict scrutiny a state or local government's imposition or implementation of a land use regulation in a manner that imposes a substantial burden on religious exercise. 42 U.S.C. § 2000cc(a)(1)(A), (B).[1] This limitation applies in several circumstances, including where

> the substantial burden is imposed in the implementation of a land use
> regulation or system of land use regulations, under which a government

---

[1] Summit also raised claims that the County violated RLUIPA, 42 U.S.C. § 2000cc, by treating religious institutions on less than equal terms with nonreligious

makes, or has in place formal or informal procedures or practices that permit the government to make, individualized assessments of the proposed uses for the property involved.

*Id.* § 2000cc(a)(2)(C). As this Court has summarized it, this means strict scrutiny applies under RLUIPA where (1) the County has made "'individualized assessments of the proposed uses for the property involved'" and (2) that decision was made pursuant to a "'land use regulation.'" *Redeemed Christian*, 17 F.4th at 507 (citation omitted). Both factors are met here.

First, the County made an individualized assessment of Summit's proposed use of the property. As this Court has explained, a government makes an "individualized assessment" for purposes of RLUIPA "'when [it] may take into account the particular details of an applicant's proposed use of land when deciding to permit or deny that use.'" *Id.* at 507 (quoting *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 456 F.3d 978, 986 (9th Cir. 2006)). Here, the County reviewed and assessed Summit's applications based on the features of the proposed development, including the size of the church, the design of the proposed development, and the conditions of the surrounding area. JA238, JA708–11.

---

institutions, discriminating on the basis or religion, and imposing unreasonable limits on religious assemblies. JA49–58. The district court observed that the "equal terms and discrimination claims also have merit," but it determined that Summit's substantial-burden claim was alone "sufficient to find a preliminary injunction is warranted." JA1839 n.5.

Second, the County's decision was made pursuant to a "land use regulation." RLUIPA defines "land use regulation" as "a zoning . . . law, or the application of such a law, that limits or restricts a claimant's use or development of land." 42 U.S.C. § 2000cc-5(5). "Zoning" is not defined in the statute, but this Court has interpreted it to mean "divid[ing] the relevant area into different categories, each of which impacts land use and restricts or permits a property's development." *Redeemed Christian*, 17 F.4th at 509*; see also id.* at 508–09 (relying on *Fortress Bible Church v. Feiner*, 694 F.3d 208, 216 (2d Cir. 2012), and Black's Law Dictionary (11th ed. 2019)).

The County's denial of Summit's rezoning applications falls comfortably within this understanding of "land use regulation." For starters, the County's conditional-use zoning procedures meet the definition of a "zoning law." They divide the area into different categories, and the category designation impacts land use and restricts development. JA238–40. And furthermore, the County's denial of Summit's request is an application of that zoning law that prevented Summit from developing on the property in any way. *Id.*; JA714. In fact, the County concedes that its decision denying Summit's rezoning request meets the definition of "land use regulation" under RLUIPA. County Br. 19.

**B.     It is irrelevant that North Carolina law defines conditional rezoning as a legislative act.**

Nevertheless, the County and its amicus discuss at length how North Carolina law defines conditional rezoning. County Br. 9–12; IMLA Br. 3–10. North Carolina law, they say, places zoning decisions in "one of four distinct categories: quasi-judicial, administrative, advisory, and legislative." County Br. 9. Quasi-judicial zoning decisions, such as variances and special use permits, involve weighing evidence, finding facts, and rendering a decision. County Br. 9; IMLA Br. 9. The legislative category includes not just the adoption or amendment of generally applicable zoning regulations, but also changes in zoning classifications for individual parcels of land. County Br. 10; IMLA Br. 11–12. North Carolina courts lack authority to require individualized rezoning decisions, like that requested by Summit here, because such decisions are legislative acts under state law. County Br. 12; IMLA Br. 14–15.

But this Court's decision in *Redeemed Christian* makes clear that none of that matters for purposes of RLUIPA. There, this Court rejected the argument that it should interpret the term "zoning" in RLUIPA under Maryland state law and therefore exclude from RLUIPA's coverage what state law instead labeled a "legislative amendment to the County's Water and Sewer Plan." 17 F.4th at 500. This Court held that because the statute includes no "'plain indication'" that state law should govern its interpretation, RLUIPA must be interpreted based on federal

17

law. *Id.* at 508. Accordingly, "it is not the label that a [state or local] government puts on its regulation" that controls whether RLUIPA applies, "but rather how the regulation actually functions." *Id.* at 509.; *see also Fortress Bible Church*, 694 F.3d at 216 (holding that environmental reviews are "land use regulations" under RLUIPA when they resolve zoning and land use issues).

Furthermore, as this Court explained in *Redeemed Christian*, the consequence of the County's position here is that state and local governments would have the power to "limit[] RLUIPA's application." 17 F.4th at 508. A town could "evade RLUIPA by what essentially amounts to a re-characterization of its zoning decisions." *Fortress Bible Church*, 694 F.3d at 218. That would "undermine[]" the "purpose of RLUIPA," which "is to *prevent* governments … from burdening religious exercise" through land-use regulations. *Redeemed Christian*, 17 F.4th at 508. And it would contravene the statute's plain text, which instructs that the law "be construed in favor of a *broad* protection of religious exercise, *to the maximum extent* permitted by [its] terms . . . and the Constitution." 42 U.S.C. § 2000cc-3(g) (emphases added).

The County resists this logic, but its arguments miss the point. For example, the County says that it allows churches in some districts upon issuance of a quasi-judicial special use permit that, under its view of RLUIPA, can be challenged under RLUIPA. County Br. 25. But that simply confirms what this Court said in *Redeemed*

18

*Christian*—that the County claims the power to "limit[] RLUIPA's application." 17 F.4th at 508. The County also points out that RLUIPA does not grant religious institutions a right to build wherever they prefer. True enough. A substantial-burden claim under RLUIPA requires asking whether a religious institution could build elsewhere. *See Bethel World Outreach Ministries v. Montgomery Cnty. Council*, 706 F.3d 548, 557 (4th Cir. 2013). But that is irrelevant to the question whether state-law definitions can exempt certain zoning actions from judicial relief under RLUIPA.

Nor do the cases on which the County relies support allowing state-law definitions to create carve-outs from RLUIPA. As the County admits, all of the cases that actually involved RLUIPA turned on the merits of the plaintiffs' RLUIPA claims, not on how state law defined the challenged action. County Br. 18 ("To be sure, these decisions turned on substance … ."). As to the non-RLUIPA cases that distinguish between legislative and judicial decisions, *see* County Br. 17 (discussing *D.C. Court of Appeals v. Feldman*, 460 U.S. 462 (1983) and *Euclid v. Ambler Realty Co.*, 272 U.S. 365 (1926)), they unsurprisingly say nothing about whether the label that state law places on a challenged action matters *for purposes of judicial intervention under RLUIPA*. Were those decades-old cases relevant to that question, this Court presumably would have addressed them when it decided *Redeemed Christian* just five years ago.

**C.    There is no constitutional impediment to federal courts reviewing "legislative" zoning decisions.**

The County and amicus also appear to argue that under the Tenth Amendment and separation-of-powers principles, federal courts are precluded from reviewing local legislative zoning decisions. *See* County Br. 12, 22–23; IMLA Br. 14-17. The Tenth Amendment provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States, are reserved to the States respectively, or to the people." U.S. Const. amend. X.

But RLUIPA does not violate principles of federalism merely because it "intrudes to some degree on local land use decisions . . . if it is otherwise grounded in the Constitution." *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1242 (11th Cir. 2004). And it is. Section 5 of the Fourteenth Amendment granted Congress power to "enforc[e] the constitutional right to the free exercise of religion." *City of Boerne v. Flores*, 521 U.S. 507, 519 (1997). And because "RLUIPA is a proper exercise of Congress's power under § 5 of the Fourteenth Amendment" to enforce the free exercise clause, "there is no violation of the Tenth Amendment." *Midrash Sephardi*, 366 F.3d at 1242; *see also Guru Nanak Sikh Soc'y*, 456 F.3d at 992–95 (RLUIPA is a proper exercise of Congress's enforcement power under section 5 of the Fourteenth Amendment).

This analysis is further bolstered by the Supreme Court's recent free-exercise jurisprudence. In *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021), the Supreme

Court confirmed that a law infringing on free exercise is "not generally applicable," and therefore is subject to strict scrutiny, "if it 'invite[s]' the government to consider the particular reasons for a person's conduct by providing 'a mechanism for individualized exceptions.'" *Id.* at 533 (quoting *Emp. Div., Dep't of Hum. Res. of Oregon v. Smith*, 494 U.S. 872, 884 (1990)); *see also id.* at 544 (Barrett, J., concurring) ("a law burdening religious exercise must satisfy strict scrutiny if it gives government officials discretion to grant individualized exemptions"). That is precisely what RLUIPA's substantial-burden provision (the provision at issue here) does: It applies strict scrutiny to "individualized" assessments that "impose[] a substantial burden on the religious exercise of a person, including a religious assembly or institution." 42 U.S.C. § 2000cc(a)(1); *see also Tandon v. Newsom*, 593 U.S. 61, 62 (2021) (per curiam) ("[G]overnment regulations . . . trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise.").

There is no merit to the County's suggestion that *SAS Associates 1, LLC v. City Council for City of Chesapeake*, 91 F.4th 715 (4th Cir. 2024), "confirms that zoning is a local legislative act beyond the federal judiciary's sphere." County Br. 22. In that case, this Court explained that "zoning decisions are presumptively the province of local governments," but as the County concedes, this Court also recognized that the presumption must yield when a zoning decision violates the

Constitution. *SAS Assocs.*, 91 F.4th at 720; County Br. 23. And as discussed, RLUIPA properly occupies that space. It "protect[s] certain religious liberties guaranteed by the First Amendment." *Midrash Sephardi*, 366 F.3d at 1237.

## II. The narrower argument that the district court lacked jurisdiction to order the County to *grant* Summit's applications also fails.

To the extent the County actually intends the narrower argument that a federal court cannot use RLUIPA to require the *approval* of a conditional rezoning request, that argument fails for two reasons. It is not properly before this Court, and it is wrong anyway.

### A. This Court cannot reach the question of the district court's authority to *require* rezoning.

Any ruling by this Court on the district court's authority to require rezoning would be improperly advisory. Summit did ask the district court for a mandatory injunction requiring the County to remedy its RLUIPA violation by granting Summit's rezoning applications. JA752. But as noted above, the district court denied that request, expressly refusing to issue an injunction that "would require Chatham County to approve Plaintiff's proposal." JA1865. Instead, it granted only a preliminary prohibitory injunction "enjoin[ing the County] from *denying* Plaintiff's rezoning proposal." *Id.* (emphasis added). And while the County appealed the granting of the prohibitory injunction, Summit did not cross-appeal the denial of the mandatory injunction. *See In re Zetia (Ezetimibe) Antitrust Litig.*, 7 F.4th 227, 238

(4th Cir. 2021) ("'[t]he failure to file [a] petition for permission to cross-appeal . . . is a jurisdictional defect, barring' consideration of any issue that may have been raised.").

**B.    The district court had the authority to require rezoning even though it did not do so.**

If the district court had ordered the County to grant Summit's rezoning applications, there would be no reversible error anyway. The County argues that such an order would violate the Tenth Amendment's anti-commandeering doctrine because it would amount to "order[ing] [a] local government[] to legislate." County Br. 15; *see also* IMLA Br.17-22. The County is wrong.

To begin with, the County does not dispute that under RLUIPA's substantial burden provision, federal courts may compel a locality to grant a variance, special use permit, or conditional use permit. Indeed, those cases are legion. *See, e.g., Fortress Bible Church*, 694 F.3d at 225 (affirming injunction compelling zoning board to grant a variance); *Rocky Mountain Christian Church v. Bd. of Cnty. Comm'rs*, 613 F.3d 1229, 1235 (10th Cir. 2010) (affirming injunction requiring the county to grant a special use permit); *Westchester Day Sch. v. Vill. of Mamaroneck*, 504 F.3d 338, 357 (2d Cir. 2007) (affirming order to issue special use permit modification); *Church of Our Savior v. City of Jacksonville Beach*, 69 F. Supp. 3d 1299, 1326 (M.D. Fla. 2014) (directing the city to grant a conditional use permit); *Guru Nanak Sikh Soc'y of Yuba City v. Cnty. of Sutter*, 326 F. Supp. 2d 1140, 1163

23

(E.D. Cal. 2003) (ordering the granting of a conditional use permit), *aff'd*, 456 F.3d 978 (9th Cir. 2006).

Instead, the County targets only rezoning because North Carolina law deems rezoning a "legislative decision." County Br. 10. In the County's view, federal courts can compel localities to undertake "quasi-judicial decisions," which encompass such things as variances, special use permits, and conditional use permits. But, the County argues, the Tenth Amendment's anti-commandeering doctrine bars a federal court from compelling anything that state law deems legislative. *Id*. at 14–15; *see also* IMLA Br. 19.

Even the County must admit that it is advancing a "novel" argument. *Id*. at 8. It has identified no decision of this Court, or any other, that draws any such distinction. *Id.* at 16 (acknowledging that "[t]his Court's RLUIPA decisions do not cabin the plaintiff's requested relief as legislative or quasi-judicial in nature"). To the contrary, this Court's decision in *Redeemed Christian* affirmed an injunction that ordered the approval of "[a] category change application" that indisputably "constitute[d] a legislative amendment." 17 F.4th at 502. And *Redeemed Christian* found "strong support in prior decisions in [this] Circuit." *Id.* at 509 (citing *Bethel*, 706 F.3d 548; *Reaching Hearts Int'l, Inc. v. Prince George's Cnty.*, 584 F. Supp. 2d 766 (D. Md. 2008), *aff'd*, 368 F. App'x 370 (4th Cir. 2010)).

The County's attempt to distinguish *Redeemed Christian* is riddled with irrelevant facts and outright misstatements. For example, the County stresses repeatedly that "[t]he property's zoning designation permitted churches by right." County Br. 19. That is true but irrelevant, as the zoning designation was not the "land-use regulation" alleged to be in violation of RLUIPA. The challenged action was instead the water and sewer category classification, which had to be changed from "Category 5 to Category 4" before the proposed church could be built. 17 F.4th at 501. Next, the County suggests that the district court in that case only "entered an injunction that prevented the county from denying the church's application." County Br. 19. That is false. The district court also "ordered the [locality there] to amend its Water and Sewer Plan and advance the Property to water and sewer Category 4." 17 F.4th at 505–06. Finally, the County claims that *Redeemed Christian* involved an action that was "quasi-judicial in nature," but that, too, is incorrect. County Br. 18. It was undisputed that the locality there considered the desired category change to be a "legislative amendment." 17 F.4th at 500.

Perhaps most important, the County also errs in suggesting that *Redeemed Christian* simply missed a glaring Tenth Amendment anti-commandeering problem with RLUIPA's substantial-burden provision. County Br. 19. The Tenth Amendment's anti-commandeering doctrine provides that "Congress may not . . . 'commandeer the legislative processes of the States by directly compelling them to

25

enact and enforce a federal regulatory program.'" *New York v. United States*, 505 U.S. 144, 161 (1992) (citation omitted). Nor can Congress require states to enact or refrain from enacting legislation. *Murphy*, 584 U.S. at 474. But Congress can, consistent with the Tenth Amendment, preempt state and local laws. *Id.* at 477. And *Redeemed Christian* made clear that it understood RLUIPA's substantial-burden provision to be just that: a valid preemption provision. "RLUIPA exempts religious land use from state laws when such laws substantially burden religious exercise without satisfying strict scrutiny." *Redeemed Christian*, 17 F.4th at 508 n.7.

When a court finds a substantial-burden violation under RLUIPA and mandates a classification or zoning change under existing law to remedy that violation, that is not commandeering. It is federal preemption of the local processes and approvals that would otherwise be needed to change the zoning from one existing classification to another. Put another way, RLUIPA confers "a federal right to be free" from land use regulation that is being implemented or imposed in a manner that substantially burdens the free exercise of religion. *Murphy*, 584 U.S. at 479; 42 U.S.C. § 2000cc(a)(1). And in issuing a mandatory injunction, a federal district court is simply effectuating that federal right by clearing away the unconstitutionally applied state-law obstacles.

As the Second Circuit has explained in rejecting a similar anti-commandeering challenge, RLUIPA does not "compel[] states to require or prohibit

any particular acts." *Westchester Day Sch.*, 504 F.3d at 355. "Instead, RLUIPA leaves it to each state to enact and enforce land use regulations as it deems appropriate so long as the state does not substantially burden religious exercise in the absence of a compelling interest achieved by the least restrictive means." *Id.*; *see also Midrash Sephardi*, 366 F.3d at 1242 (RLUIPA does not violate the Tenth Amendment because it "leaves individual states free to eliminate discrimination in any way they choose, so long as the discrimination is actually eliminated."). But if states or municipalities violate those federal conditions, courts may set aside the state or local laws and processes that impede the required variance, permit, or reclassification—by mandatory injunction, if necessary.

That is what this Court affirmed in *Redeemed Christian*. To build, the church needed the Prince George's County Council to go through its "legislative amendment" process and approve a water and sewer category change from Category 5 to Category 4. 17 F.4th at 501–02. After various meetings and hearings, the Council disapproved the church's application for a laundry list of reasons. *Id.* at 502–04. The district court concluded that this process and ultimate denial violated the substantial-burden provision of RLUIPA and did not satisfy strict scrutiny. So the court exempted the church from the burden of those laws by ordering the County simply to "advance the Property to water and sewer Category 4." *Id.* at 505–06.

27

To be sure, a federal court could theoretically issue a mandatory injunction—purportedly pursuant to RLUIPA or any other federal statute—that crosses the line into commandeering. That was arguably the case in *Smith & Lee Associates, Inc. v. City of Taylor*, 102 F.3d 781, 789 (6th Cir. 1996), on which the County relies (County Br. 15–16). In that case, the Sixth Circuit held that the district court exceeded its authority by requiring a city to remedy a Fair Housing Act violation by amending its zoning ordinance to add the district court's definition of "family." *Smith & Lee*, 102 F.3d at 789–90. After all, the federal government cannot "compel a State to enact legislation." *Murphy*, 584 U.S. at 474.

But that is a far cry from a mandatory rezoning order, like what this Court affirmed in *Redeemed Christian*. One is a directive that the local government forgo its usual processes, which have been found to be discriminatory with respect to a particular claimant, and proceed to reclassify only certain parcels of property from one established state-law category to another. The other is a command that the local government enact a new, forward-looking, generally applicable law of the federal government's creation.

The only connection the County draws between the two is that both are deemed "legislative acts" under North Carolina law. But the County identifies no case holding that the anti-commandeering doctrine turns on state law definitions, because there is none. Rather, the analysis in the Supreme Court's anti-

commandeering cases has always been a functional inquiry into whether the federal government is controlling the state or merely preempting it.[2] And as explained, a mandatory rezoning order functions only to preempt state laws found to have been implemented or imposed in a manner that substantially burdens the free exercise of religion without satisfying strict scrutiny.[3]

**III.** **This Court should affirm the merits of the district court's preliminary injunction order.**

**A.** **The County has waived any argument on the merits of the preliminary injunction.**

It is well established that arguments not raised in an opening brief are waived. *See Schulman v. Axis Surplus Ins. Co.*, 90 F.4th 236, 245 n.5 (4th Cir. 2024) ("'A party waives an argument by failing to present it in its opening brief.'" (quoting

---

[2] *See Murphy*, 584 U.S. at 474–77 (distinguishing between statutes that "dictate[] what a state legislature may and may not do" and statutes that "impose[] restrictions or confer[] rights on private actors" and thereby "preempt[]" conflicting state laws); *Hodel v. Va. Surface Mining & Reclamation Ass'n, Inc.*, 452 U.S. 264, 288–90 (1981) (distinguishing between laws "compelling [states] to enact and enforce a federal regulatory program" and laws that "displace or pre-empt state laws regulating private activity").

[3] Consistent with that, a mandatory rezoning order from a federal court would not be considered a "legislative" act under *federal* law. As this Court has said, federal law deems an action "legislative if the facts involve 'generalizations concerning a policy or state of affairs' and the 'establishment of a general policy' affecting the larger population." *Alexander v. Holden*, 66 F.3d 62, 66 (4th Cir. 1995) (citation omitted). In contrast, where "the underlying facts 'relate to particular individuals or situations' and the decision impacts specific individuals or 'singles out specifiable individuals,' the decision is administrative." *Id.* A mandatory rezoning order in a substantial-burden RLUIPA case, as here, would fall plainly in the latter category.

*Grayson O Co. v. Agadir Int'l LLC*, 856 F.3d 307, 316 (4th Cir. 2017))); *Metro. Reg'l Info. Sys., Inc. v. Am. Home Realty Network, Inc.*, 722 F.3d 591, 602 n.13 (4th Cir. 2013) ("[Appellant] waived this argument by raising it for the first time in its reply brief"); *Kensington Volunteer Fire Dep't, Inc. v. Montgomery Cnty.*, 684 F.3d 462, 472 n.4 (4th Cir. 2012) ("[Appellant's] opening brief does not challenge the district court's dismissal of their claims . . . . Accordingly, we consider these issues waived."); *IGEN Int'l, Inc. v. Roche Diagnostics GmbH,* 335 F.3d 303, 308 (4th Cir. 2003) ("Failure to present or argue assignments of error in opening appellate briefs constitutes a waiver of those issues."); *see also, Joseph v. United States*, 135 S. Ct. 705, 705 (2014) (denying cert) (stating the "rule providing that issues not raised in an opening appellate brief are forfeited, and so may not be raised in subsequent filings . . . makes excellent sense.").

For example, this Court deemed several issues waived by the county in *Redeemed Christian*. This Court accepted the district court's ruling that the county's denial of the applications constituted a substantial burden because the county did not challenge that ruling on appeal. 17 F.4th at 510. Also, in the strict scrutiny analysis, this Court rejected all of the county's allegedly compelling interests except one— traffic—because the county abandoned them on appeal. *Id.* at 511 n.11.

Here, the County makes no argument whatsoever on the merits of the district court's decision granting Summit a preliminary injunction. This entire issue is therefore waived.

**B.      In any event, the district court correctly concluded that Summit met all four requirements for a preliminary prohibitory injunction.**

The County's decision to waive and focus solely on jurisdiction is unsurprising, given the record and the district court's sound reasoning. As discussed further below, the district court correctly found that Summit met all four requirements for a preliminary injunction: (1) likelihood of success on the merits; (2) irreparable harm; (3) balance of the equities; and (4) the public interest. *Vitkus v. Blinken*, 79 F.4th 352, 361 (4th Cir. 2023).

**1.      Summit is likely to succeed on the merits of its substantial burden claim.**

The district court properly concluded that Summit is likely to succeed on its claim that the County imposed a substantial burden on its religious exercise without satisfying strict scrutiny. A land use regulation imposes a substantial burden if (a) the impediment to religious exercise is substantial and (b) the government, not the religious entity, is responsible for the impediment. *Canaan Christian Church v. Montgomery Cnty.*, 29 F.4th 182, 192 (4th Cir. 2022). Both conditions are met here. The County also failed to meet its burden under strict scrutiny.

### a. The County's denial of Summit's applications imposed a substantial burden on religious exercise.

A government restriction is "substantial" if: (1) the property at issue would serve an unmet religious need; (2) the restriction is absolute rather than conditional; and (3) the restriction requires the church to find a different property. *Id*. at 192–93.

First, the district court correctly found that Summit put forth "significant evidence" that the property serves an unmet religious need. JA1841–43. "[E]vidence of an unmet religious need" includes evidence of "an overcrowded facility, the need for multiple services to accommodate the number of members, and a lack of space for programs." *Canaan*, 29 F.4th at 193. Here, Summit presented "significant" "undisputed evidence" of an unmet religious need by showing that it is "'running up . . . against capacity,'" and limiting its programs as a result. JA1841–42, JA1851.

Second, the denial of Summit's rezoning applications was an absolute restriction on religious land use. "An impediment is absolute where land use restrictions wholly prevent a religious organization from building any house of worship on its property, rather than simply imposing limitations on the building." *Alive Church of the Nazarene, Inc. v. Prince William Cnty.*, 59 F.4th 92, 106 (4th Cir. 2023). Summit's proposal was denied outright, without any condition. JA714, JA1843.

Third, the County's denial of the rezoning applications would force Summit to acquire a different property. Summit's Mem. in Supp. of Prelim. Inj. Mot. 14 (Dkt.

7); JA1843. As the district court explained, "[b]ecause of the denial of its proposal, [Summit] . . . will have to identify an alternative property." JA1841.

    **b.**  **The County created the impediment to Summit's religious exercise.**

A local government creates an impediment to religious exercise when an organization buys a property with a reasonable expectation of religious land use and such use is denied. *Bethel*, 706 F.3d at 557; *Andon, LLC v. City of Newport News*, 813 F.3d 510, 515 (4th Cir. 2016).

Summit had a reasonable expectation that the County would approve its rezoning applications for at least two reasons. First, Summit had a reasonable expectation of approval based on the County's track record of approving applications. An agency's track record of approving applications is relevant to the "reasonable expectation" inquiry. *Reaching Hearts*, 584 F. Supp. 2d at 784, *aff'd*, 368 F. App'x 370 (4th Cir. 2010). The district court found that Summit put forth "significant undisputed evidence" that its proposal complied with Plan Chatham and that the Board had never rejected a rezoning application that was in line with Plan Chatham. JA1851; Summit Mem. in Supp. of Prelim. Inj. Mot. 16–17 (Dkt. 7).

Second, Summit had a reasonable expectation of approval because the Board recently approved Herndon Farms' rezoning application for the same parcel, which was even less intrusive than Summit's proposal. The proposed Herndon Farms facility was over 51,000 square feet larger than Summit's. JA400; Summit Mem. in

Supp. of Prelim. Inj. Mot. 20 (Dkt. 7). Summit would generate 26% less traffic than

Herndon Farms throughout the week and 59% less traffic on a typical weekday.

Summit Reply 12 (Dkt. 21) (citing Dkt. No. 18-26, at 167–68); JA34–35. And

Herndon Farms pulled even more revenue out of the tax base, JA32, and left less

land undeveloped, JA26.[4]

### c. The County failed to meet the requirements of strict scrutiny.

It is well established that it is the government's burden in strict scrutiny to

show that its actions were the least restrictive means of meeting a compelling

government interest. *Holt v. Hobbs*, 574 U.S. 352, 362–63 (2015); *Gonzales v. O*

*Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 429–30 (2006);

*Redeemed Christian*, 17 F.4th at 510. A governmental interest "must be genuine, not

hypothesized or invented *post hoc* in response to litigation." *United States v.*

*Virginia*, 518 U.S. 515, 533 (1996) (intermediate scrutiny); *Tucker v. Collier*, 906

F.3d 295, 301 (5th Cir. 2018) (government's interest in RLUIPA cases cannot be

---

[4] Additional reasons include that Summit's commercial broker (CBRE Raleigh) identified the property for Summit to build on and Summit's planning, and design representative, Qunity, advised that the Property could be used for a church and harmonized the design of the build with the surrounding area. JA1760; JA436–37. Further, prior to Summit submitting its applications, the Appearance Commission stated Summit had taken "'special care'" to protect the viewshed and Plan Chatham, and the Future Use Map calls churches "'part of the fabric'" of Compact Residential areas. JA27; JA29–30.

"'grounded on mere speculation, exaggerated fears, or post-hoc rationalizations'") (citation omitted).

The County failed to meet its burden. Traffic and emergency response times is a post-hoc rationalization because the County did not raise it at the December Meeting or in its non-consistency statement. It is also pretextual because Herndon Farms would have generated more traffic than Summit's plan. Summit Reply 12 (Dkt. 21) (citing Dkt. No. 18-26, at 167-68); JA34–35. The County also provided no evidence to support its traffic concerns. *See Reaching Hearts*, 584 F. Supp. 2d at 788 (government interest pretextual where not supported with evidence). The County cannot rely on tax revenue or rural character either because it is undisputed that Herndon Farms would have pulled more land out of the tax base and preserved less for open space. Summit Mem. in Supp. of Prelim. Inj. Mot. 17 (Dkt. 7); JA32–34. Finally, the County failed to "put forth *any*" argument or evidence that a complete and unequivocal denial of Plaintiff's proposal is "the least restrictive means of furthering that interest." JA1860–61 (emphasis in original).

### 2. Irreparable harm, the balance of the equities, and the public interest supported an injunction.

The district court correctly found Summit would suffer irreparable harm. JA1862–63. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The same is true in RLUIPA cases. *Opulent Life Church v. City of Holly*

*Springs*, 697 F.3d 279, 295 (5th Cir. 2012); *see also Reaching Hearts*, 584 F. Supp. 2d at 795 ("infringement of one's rights under RLUIPA constitute[s] irreparable injury").

The district court also correctly found that the balance of equities and public interest support an injunction. JA1864–65. When the government is a party, the balance of the equities and the public interest "merge." *Nken v. Holder*, 556 U.S. 418, 435 (2009). Here, "the public undoubtedly has an interest in seeing its governmental institutions follow the law." *Roe v. Dep't of Def.*, 947 F.3d 207, 230–31 (4th Cir. 2020) (quotation marks omitted). And that interest is heightened when First Amendment freedoms are at stake. *Christian Legal Soc'y v. Walker*, 453 F.3d 853, 859 (7th Cir. 2006) ("injunctions protecting First Amendment freedoms are always in the public interest").

## <u>CONCLUSION</u>

This Court should affirm the district court's preliminary injunction.

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Because the only issue properly before this Court is governed by on-point circuit precedent, Summit does not believe that oral argument is necessary to assist the Court in deciding this case. However, if this Court grants oral argument, Summit respectfully requests the opportunity to participate.

Dated:  March 23, 2026

Respectfully submitted,

/s/ Elbert Lin
Elbert Lin
  *Counsel of Record*
HUNTON ANDREWS KURTH LLP
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, Virginia 23219
Telephone: (804) 788-8200
elin@hunton.com

Erica N. Peterson
Nicole R. Johnson
HUNTON ANDREWS KURTH LLP
2200 Pennsylvania Ave., NW
Washington, D.C. 20037

Jeffrey C. Mateer
David J. Hackner
Jeremiah G. Dys
Ryan N. Gardner
FIRST LIBERTY INSTITUTE
2001 West Plano Parkway, Suite 1600
Plano, TX 75075

Joseph L. Olson
MICHAEL BEST & FRIEDRICH
LLP
790 North Water Street, Suite 2500
Milwaukee, WI 53202

Keith E. Richardson
Michael G. Schietzelt, Jr.
MICHAEL BEST & FRIEDRICH
LLP
4509 Creedmoor Road, Suite 501
Raleigh, NC 27612

*Counsel for Plaintiff-Appellee*

37

<u>**CERTIFICATE OF COMPLIANCE**</u>

1.      This brief complies with the type-volume limitations of Second Circuit Rule 32.1 because this brief contains 8,464 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2016 in Times New Roman 14-point font.

Dated:  March 23, 2026

<u>/s/ Elbert Lin</u>
Elbert Lin